**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

AIKEAM FRIEND,
*Plaintiff*,

v.

GMRI, INC.,
*Defendant*

Case No. 26-cv-0010-ABA

# MEMORANDUM OPINION

Defendant GMRI, Inc. has moved to compel arbitration of Plaintiff Aikeam Friend's employment-related claims.[1] For the reasons that follow, the Court will grant the motion and dismiss the case without prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

Mr. Friend was employed by GMRI at various LongHorn Steakhouses. ECF No. 4 ¶¶ 11–13. When he was hired in 2021, Mr. Friend was required to review and accept a Dispute Resolution Process Agreement ("DRPA"). ECF No. 6-3 at 4.[2] The DRPA review acknowledgment page that was part of the on-boarding process included a hyperlink to the DRPA. *Id.* Mr. Friend was required to click on the link and view the DRPA before proceeding. *Id.* He then electronically signed his acceptance of the DRPA. *Id.* Mr. Friend agrees with this depiction of the process. ECF No. 9 at 2. The signature page of the DRPA provides as follows:

[1] GMRI also argues in the alternative that Mr. Friend's claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because the Court will compel arbitration and dismiss the case on that basis, it does not reach GMRI's alternative arguments.

[2] Page citations are to ECF pagination, which may differ from the parties' page numbers.

> This Agreement contains the requirements, obligations, procedures, and benefits of the Dispute Resolution Process (DRP). I acknowledge that I have received and/or had the opportunity to read this arbitration agreement. I understand that this arbitration agreement requires that disputes that involve matters subject to the agreement be submitted to mediation or arbitration pursuant to the arbitration agreement rather than to a judge or jury in court. I agree as a condition of my employment, to submit any eligible disputes I may have to the DRP and to abide by the provisions outlined in the DRP. I understand this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the Company is equally bound to all of the provisions of the DRP.

ECF No. 6-3 at 12. The DRPA, in turn, provides that:

> The DRP, instead of court actions, is the sole means for resolving covered employment-related disputes. Disputes eligible for DRP must be resolved only through DRP, with the final step being binding arbitration heard by an arbitrator. This means DRP-eligible disputes will not be resolved by a judge or jury. Neither the Company nor the Employee may bring DRP-eligible disputes to court. The Company and the employee waive all rights to bring a civil court action for these disputes.

*Id.* at 17. The DRPA is governed by the Federal Arbitration Act ("FAA"), *id.* at 15, and expressly covers, among other things, employment-related claims under Title VII, and the FMLA, *id.* at 17. The DRPA also includes a delegation clause providing that "[t]he arbitrator has the sole authority to determine whether a dispute is arbitrable and whether it has been timely filed and pursued." *Id.* at 22.

Mr. Friend alleges in his complaint that GMRI fired him in February 2024. ECF No. 4 ¶ 52. Mr. Friend contends that his firing was discriminatory and retaliatory and filed a complaint in state court on November 12, 2025. ECF No. 4. Mr. Friend asserts

claims for retaliation under Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act, interference with FMLA rights and FMLA retaliation, violations of the Maryland Healthy Working Families Act, and breach of implied contract related to his leave requests. *Id.* ¶¶ 76–161. All of Mr. Friend's claims concern his employment with GMRI. After GMRI removed the case to this Court, it moved to compel arbitration under the DRPA. ECF No. 6. Mr. Friend filed a response, and GMRI filed a reply. ECF Nos. 9 & 13.

## II. STANDARD

When a motion to compel arbitration relies on documents outside of the complaint, it is subject to the summary judgment standard in Federal Rule of Civil Procedure 56. *See Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) ("Where, as here, the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment."); *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 n.3 (4th Cir. 2016) (noting that the standard for challenging an arbitration agreement "is akin to the burden on summary judgment") (quoting *Chorley Enters. v. Dickey's Barbecue Rests.*, 807 F.3d 553, 564 (4th Cir. 2015)); *see also Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 45 n.1 (3d Cir. 1991) (holding that arbitration provision disputes are governed by "Rule 56 covering summary judgments if matters beyond the pleadings were considered").

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense—or the part of [any] claim or defense"—by showing that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof

of its existence "might affect the outcome of the suit," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[C]ourts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)).

If a motion to compel arbitration is granted, § 3 of the FAA (9 U.S.C. § 3) requires the court to stay the case unless "all of the issues presented in a lawsuit are arbitrable," in which case "dismissal is a proper remedy." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).

## III. DISCUSSION

A court must grant a motion to compel arbitration where "(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." *Chorley Enters.*, 807 F.3d at 563. "The issue whether a dispute is arbitrable presents primarily a question of contract interpretation, requiring that [courts] give effect to the parties' intentions as expressed in their agreement." *Id.* (quoting *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013)). If a court concludes "that the parties intended to arbitrate a dispute" then the court "must enforce that agreement according to its terms." *Id.* (citing *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). "In determining the parties' intent, [courts] apply ordinary state law principles governing the formation of contracts." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Under Maryland law, '[t]he formation of a contract requires mutual assent (offer and

acceptance), an agreement definite in its terms, and sufficient consideration.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone. Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The party opposing arbitration bears the burden of proving the agreement is invalid. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (2001). A court should not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

As discussed below, the arbitration agreement is valid and all of Mr. Friend's claims are within its scope. The arbitration agreement also contains a delegation clause providing that "[t]he arbitrator has the sole authority to determine whether a dispute is arbitrable." ECF No. 6-3 at 22. Thus, after determining that the arbitration agreement is facially valid, the Court "must next determine whether" the delegation clause itself is enforceable. *Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 241 (4th Cir. 2025). As also discussed below, the delegation clause is enforceable and, therefore, the Court will not consider contract defenses such as the alleged unconscionability of the agreement as a whole, as those questions are solely for the arbitrator.

### A. Validity of the Arbitration Agreement

The requirements of offer, acceptance, and consideration are present here; thus the arbitration agreement is valid. Mr. Friend does not dispute that the agreement was offered to him, but he does argue that there was no acceptance or consideration.

### 1. Acceptance

"Acceptance is demonstrated by 'an actual meeting of the minds regarding contract formation'" *Braude v. Robb*, 255 Md. App. 383, 400 (2022) (quoting *Cochran v. Norkunas*, 398 Md. 1, 23 (2007)). A signature can demonstrate acceptance. *Porter v. Gen. Boiler Casing Co.*, 284 Md. 402, 410 (1979) ("The purpose of a signature is to demonstrate 'mutuality or assent' which could as well be shown by the conduct of the parties").

The language on the signature page of the DRPA that Mr. Friend electronically signed confirms that he received and had the opportunity to review the DRPA. ECF No. 6-3 at 5 & 12; *see also* ECF No. 9 at 2 (Mr. Friend admitting that "[d]uring the onboarding process on August 23, 2021, Plaintiff electronically acknowledged a Dispute Resolution Process (DRP) agreement presented via a hyperlink . . . [that] required Plaintiff to click through to review the agreement before electronically signing an acknowledgment page stating that arbitration of eligible employment-related disputes was a condition of employment"). That signature page also informed Mr. Friend that by signing the agreement, he agreed to submit eligible disputes through the DRPA. ECF No. 6-3 at 12. And the introduction to the DRPA explains the scope of the parties' mutual obligation to arbitrate employment-related claims. *Id.* at 17. Mr. Friend's electronic signature on the acknowledgment page establishes his actual knowledge and acceptance of Defendant's offer to arbitrate employment-related disputes.

Mr. Friend argues that there was no meeting of the minds because he does not remember during the hiring process a conspicuous warning that he was agreeing to arbitrate claims; he contends that he just had to click through links before electronically signing the DRPA acknowledgment without having to comprehend what was presented

to him and he had no opportunity to negotiate the agreement. But "the law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms." *Merit Music Service, Inc. v. Sonneborn*, 245 Md. 213, 221–22 (1967); *see Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 595 (2006) ("a party who signs an arbitration agreement is presumed to have read and understood its terms and as such will be bound by its execution"); *see also Gordon v. Zeroed-In Tech., LLC*, Case No. 23-cv-3284-BAH, 2025 WL 941365 at *6–*8 (D. Md. Mar. 26, 2025) (finding valid an arbitration agreement accessed via hyperlink during the job application process that required the applicant to check a box agreeing that they had received and read the arbitration agreement and agreed to its terms); *Mason v. Domino's Pizza, LLC*, Case No. 20-cv-1908, 2021 WL 4820520-DLB, at *4–*5 (D. Md. Oct. 15, 2021) (finding valid an arbitration agreement that new hires had to accept by clicking a button before electronically signing the employment agreement). Here, Mr. Friend acknowledged that the DRPA was presented to him, that he clicked the link and reviewed it, and signed that he understood that submitting claims through the DRPA was a condition of his employment. He has not pointed to any evidence that would overcome the presumption that he understood the import of the DRPA. As a result, even viewing the evidence in the light most favorable to him, Mr. Friend accepted the arbitration agreement as part of the hiring process.

### 2. Consideration

Mr. Friend contends that the arbitration agreement lacked consideration but does not clearly articulate why. Mutual promises to arbitrate claims constitute sufficient consideration to support an arbitration agreement. *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998) ("[A]n arbitration agreement [is] supported by

sufficient consideration where both parties agree to be bound by the arbitration process."); *Holloman*, 391 Md. at 591 ("We have recognized that a binding promise may serve as consideration for another promise."). The DRPA contains such a mutual promise. ECF No. 6-3 at 17 ("Neither the Company nor the Employee may bring DRP-eligible disputes to court."); *id.* at 26 ("I understand that the Company is equally bound to all of the provisions of the DRP."). Thus, there was adequate consideration for the arbitration agreement, and it is valid and enforceable.

### B. Scope of the Arbitration Agreement

The DRPA provides that all employment-related claims (except certain claims not at issue here) fall under its purview. *Id.* at 17 (stating that the DRPA "is the sole means for resolving covered employment-related disputes" and listing the exceptions to the DRPA). Mr. Friend's claims for retaliation under Title VII and the Maryland Fair Employment Practices Act, interference with FMLA rights and FMLA retaliation, violations of the Maryland Healthy Working Families Act, and breach of implied contract related to his leave requests are all clearly employment-related and do not fall into the exceptions listed in the DRPA. ECF No. 4 ¶¶ 76–161. Thus, all of Mr. Friend's claims are within the scope of the arbitration agreement.

### C. Enforceability of the Delegation Clause

Mr. Friend has challenged the enforceability of the delegation clause. Having determined that there is a binding arbitration agreement between the parties, the Court must now consider whether the delegation clause in that agreement is enforceable. If it is, the Court may not consider questions of arbitrability before granting the motion to compel arbitration, as those questions would solely be for the arbitrator.

The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). "[T]o meet the 'clear and unmistakable' standard, an agreement must contain language specifically and plainly reflecting the parties' intent to delegate disputes regarding arbitrability to an arbitrator." *Novic v. Credit One Bank, Nat'l Ass'n*, 757 F. App'x 263, 265-66 (4th Cir. 2019). "When the delegation is plainly stated, there are no exceptions, and 'courts must respect the parties' decision as embodied in the contract.'" *Devine v. Bethesda Softworks, LLC,* 636 F. Supp. 3d 564, 571 (D. Md. 2022) (quoting *Henry Schein,* 586 U.S. at 71).

As stated, the arbitration agreement here contains the following delegation clause: "[t]he arbitrator has the sole authority to determine whether a dispute is arbitrable and whether it has been timely filed and pursued." ECF No. 6-3 at 22. This language is clear and unmistakable, explaining that the arbitrator alone will determine the arbitrability of a dispute.

Mr. Friend argues that the delegation clause is nonetheless procedurally and substantively unconscionable. "The prevailing view is that both procedural and substantive unconscionability must be present in order for a court to invalidate a contractual term as unconscionable." *Freedman v. Comcast Corp.*, 190 Md. App. 179, 207–08 (2010). An agreement can be procedurally unconscionable when a party lacks meaningful choice or the agreement uses convoluted or unclear language. *Walther v. Sovereign Bank*, 386 Md. 412, 426–27 (2005). And it can be substantively unconscionable when, among other things, the terms are "unreasonably favorable to the more powerful party" or "attempt to alter in an impermissible manner fundamental

duties otherwise imposed by the law." *Freedman*, 190 Md. App. at 209 (quoting *Walther*, 386 Md. at 426).

Mr. Friend contends that the delegation clause is procedurally unconscionable because he could not negotiate its terms and he did not receive adequate notice of it when reviewing the DRPA. But "if unequal bargaining power were enough to create procedural unconscionability, virtually all agreements requiring employees to arbitrate would be unconscionable as employers generally have greater bargaining power than potential employees. Plainly, that is not the law." *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 685 (4th Cir. 2020). And as to Mr. Friend's second argument, the Court has already concluded that Mr. Friend had adequate notice of the DRPA provisions, including the delegation clause, and affirmatively consented to them. *Merit Music Service*, 245 Md. at 221–22 ("[T]he law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms.").

Mr. Friend also argues that the clause would be substantively unconscionable "[i]f the delegation clause forces Plaintiff to incur substantial costs merely to challenge the validity of the arbitration agreement" because "it may prevent the effective vindication of his statutory rights under Title VII, the FMLA, and Maryland employment laws." ECF No. 9 at 11. But the DRPA clearly states that GMRI "will pay the arbitrator's fees and expenses, any costs for the hearing facility, and any costs of the arbitration service." ECF No. 6-3 at 23. And Mr. Friend points to no portion of the delegation clause that could be interpreted as impermissibly altering any fundamental legal duties. Instead, the delegation clause is neutral and mutually binding, is neither procedurally nor substantively unconscionable, and is otherwise enforceable. Thus, the Court's

analysis ends, having found the DRPA valid, Mr. Friend's claims within its scope, and the delegation clause enforceable. As a result, the Court must enforce the DRPA. *Chorley Enters.*, 807 F.3d at 563. The final question is whether to stay the case pending arbitration or dismiss it without prejudice.

### D. Dismissal Is Appropriate

As stated, while § 3 of the FAA provides that a case must be stayed after granting a motion to compel arbitration, the Fourth Circuit has held that "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels*, 252 F.3d at 709–10. Because all of Mr. Friend's claims are arbitrable and the DRPA and the delegation clause are valid and enforceable, the Court will dismiss the case (without prejudice).

## IV. CONCLUSION

Because the parties entered into a valid and binding arbitration agreement, the motion to compel will be granted and this case will be dismissed without prejudice.

A separate order will issue.

Date: September 9, 2026

*/s/*
Adam B. Abelson
United States District Judge